UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mathew F. Beaudette<br><br>**Plaintiff**<br><br>v.<br><br>Aspen Insurance Company; Blue Water Insurance Corporation; Debbie Melisa Falto; Luciano Román Chico; ABC Insurance Company; John Doe and Jane Doe; XYZ Corporation<br><br>**Defendants** | Civil No.<br><br>Personal Injury;<br>Diversity;<br>Maritime Law<br>Trial by Jury Demanded |

## COMPLAINT

**TO THE HONORABLE COURT:**

    **COMES NOW** Plaintiff, Matthew Beaudette, by and through her undersigned counsel, respectfully states and prays as follows:

### I. NATURE OF THE CASE

1.    This is a claim sounding in tort based upon allegations injuries suffered as a result of the negligent operation of a power boater operated by Luciano Roman Chico while plaintiff was anchored in his sailing catamaran in Boqueron, P.R.

### II. JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds $75,000 and plaintiff and the defendants are citizens of different states.

3. In the alternative, this is an action in admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 as hereinafter more fully appears.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The claims asserted in this Complaint are based on defendants' conduct occurring in this district and, each tortfeasor and Defendant maintains its office(s) and performs its duty(ies) within this district.

### III. THE PARTIES

5. At all relevant times herein Plaintiff Matthew Beaudette is of legal age, and a resident of the State of Florida.

6. At all relevant times herein Defendant, Aspen Insurance Company, was and still is an insurance company doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, covering all risk for injuries and accidents that Plaintiff suffered as a result of operator's negligence in operating the motor boater.

7. At all relevant times herein Defendant, Blue Waters Insurance Corporation, was and still is an insurance company doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, covering all risk for injuries and accidents that Plaintiff suffered as a result of operator's negligence in operating the motor boater.

8. At all relevant times herein Defendants, Debbie Melisa Falto, John Doe and the conjugal partnership ABC between them, were and still are the registered owners of

the power boater that collided with Plaintiff's catamaran at the time of the injuries and damages alleged herein.

9. At all relevant times herein Defendants, Luciano Román Chico, Jane Doe and the conjugal partnership DEF between them, were the co-owners and/or operators and/or lessors of the power boater that collided with Plaintiff's catamaran at the time of the injuries and damages alleged herein.

10. Defendant ABC Insurance Co. was and still is an insurance company doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, a policy of insurance issued to any codefendants, covering all risk for injuries and accidents that Plaintiff suffered as a result of defendant's negligence in operating the power boater as described herein.

11. Fictitiously named Defendants, John and Jane Doe, Richard Roe and XYZ Corporations, and conjugal partnership ABC and DEF, upon information and belief, are liable for the acts complained of herein, but whose acts and true identities are unknown to the Plaintiff. Plaintiff will request leave of the Court to amend their Complaint to insert the true names of the fictitiously named Defendants when said names are known to the Plaintiff, and to allege specifically their claims against said Defendants.

### IV. FACTUAL ALLEGATIONS

12. Plaintiff is the owner of a white 43 feet long High Field CL360 Catamaran/ CSM Model 2022 registered in Florida, USA.

13. On or about 9:55 PM of September 1st, 2024, Plaintiff's catamaran was anchored in the waters of Boqueron, Cabo Rojo, P.R. with the Catamaran's lights

turned when suddenly a 36 feet long Bostor Willer operated by Luciano Román Chico with registration number PR 9740 CC slammed into Plaintiff's starboard bow's catamaran (tube that holds the cables of the catamaran sails).

14. After the incident Plaintiff Mr. Beaudette was disbelieved and shocked by the incident.

15. Shortly thereafter, Mr. Beaudette and Mr. Chico exchanged information and the following day went to the Cuerpo de Vigilantes Recursos Naturales- Unidad Maritima office in Boquerón, Cabo Rojo to fill out our statements and file a report.

16. Eventually, Mr. Luciano, as the owner of the boat, and Mr. Beaudette signed an agreement (in front of at least 2 law enforcement officers) that Mr. Chico wrote out stating that he was going to pay for all the repairs related to the accident. Furthermore, Mr. Chico told Mr. Beaudette that he has the money to pay for the repairs as his boat is worth $750k, and that he owns a dealership nearby, and he has a vacation house in Miami.

17. Thereafter, Mr. Beaudette agreed to allow Mr. Roman to hire some local people to fix what can be fixed there at anchor, which included some gelcoat repair and the replacement of the bow spirit that was destroyed and putting new feet on the margadale.

18. As the time passed, Mr. Beaudette traveled to Fajardo, Puerto Rico and he got hauled out for both of his two-year service and to see about getting the rest of the damage repaired. Thereafter, he was was told that his catamaran's crossbeam could not be repaired and it would need to be replaced. So he got an initial estimate and sent it to Mr. Roman in order that he could get an idea about how much it was going to cost.

19. It was at this time Mr. Roman began to retract himself and said that he was not going to pay for it.

20. Mr. Beaudette tried to repair his catamaran at the shop in Puerto Rico, but he was unable to repair his boat. Meanwhile, Mr. Beaudette did his best to make temporary repairs and departed Puerto Rico for Florida by way of the Bahamas.

21. As a result of the damage suffered after the incident in the case at bar, Mr. Mr. Beaudette could not sail with the wind above 60 degrees apparent because it would put pressure on the forward stay and the crossbeam which raised the risk of getting dismasted. So, Mr. Beaudette motored sailed very conservatively, making it back to Florida in January while under extreme stress and fear of being dismasted.

22. As of today's date, Mr. Beaudette had gotten most of the catamaran damage repaired.

23. Mr. Roman did not inform him that Mr. Beaudette about his insurance company.

24. These occurrences and injuries occurred solely as a direct and proximate result of the FURA captain and crew's negligence, as a direct and proximate result of the initial acts, negligence, gross negligence, lack of attention, on the part of the FURA captain and crew, without any negligence on the part of the Plaintiff contributing thereto.

25. Plaintiff's injuries were also caused as a direct and proximate result of the unseaworthiness of the Vessel, which was not fit or suitable to undertake the voyage that day.

26. The negligence of the Defendants, in addition to that hereinabove alleged, consisted of:

a. Operator inattention or distraction;

b. boating under the influence of alcohol;

c. reckless driving and operation;

d. excess speed or high speed maneuvers;

e. ignoring boating traffic rules;

f. failure to maintain the vessel;

g. ignoring weather condition;

h. lack of proper safety equipment;

i. standing or moving around improperly while the boat is in motion;

j. Non-functional communication tools;

k. failure to adhere to right-of-ways rules;

l. poor visibility or failure to use navigation lights at night;

m. Unawareness of fixed objects as the catamaran;

n. Failing to Familiarize with boating regulations for watercraft safety and operations;

o. failure to monitor;

p. equipment malfunction;

q. failure to maintain a proper lookout;

r. failure to use adequate navigation tools;

s. failure to position for maximum visibility;

t. failure to maintain a safe speed;

u. failing to operate vessel in a safe and reasonable manner;

v. failure to warn Plaintiff of the collision;

    w. failing to generally exercise that degree of care commensurate with the conditions existing at the time;

    x. undertaking a voyage knowingly of the bad and dangerous weather conditions;

    y. negligent navigation;

    z. Other acts of negligence which will be shown at trial.

## V. NEGLIGENCE AND DAMAGES

## COUNT I: NEGLIGENCE AND DAMAGES

27. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

28. Those who travel/voyage a vessel have a duty to exercise the highest degree of care and diligence in providing for the safety of the passengers and other boats in their surroundings.

29. At all relevant times herein, the power boater was operated in a negligent and reckless manner to the point it slammed into plaintiff's catamaran while being anchored.

## COUNT II: (Breach of Contract)

30. The allegations of the preceding paragraphs are re-alleged as if fully set forth in their entirety.

31. On September 2, 2024, Plaintiff entered into a valid, and enforceable written contract with defendant as owners and/or operators of the vessel to repair all damages caused to his vessel.

32. Plaintiff has fully performed its obligations under the Agreements.

33. According to the Agreement, Defendants would have paid for all plaintiff's catamaran repair and damages.

34. Defendants materially and intentionally breached the agreement with Plaintiff.

35. Furthermore, Defendant Mr. Roman denied to paid plaintiff as agreed by means of excuses to not fulfill his contractual obligations.

36. Plaintiff demanded on Defendants to cure its breach but defendants have refused.

37. Plaintiff has been and will be damaged by this material breach because he had to incur and will be incurring in cost and expenses to repair his catamaran that has taken years of effort.

## **COUNT II: NEGLIGENCE PER SE**

38. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

39. Defendants Mr. Roman and Ms. Debbie Melisa Falto as operator(s) and/or owner(s) of the vessel (power boater) violated the International Regulations for Preventing Collisions at Sea ("COLREGS"), including but without limitation to:

   a. Rule 2: Neglect of precautions required by the ordinary practice of seamen, or special circumstances of the case;

   b. Rule 5: Failure to maintain a proper lookout to make a full appraisal of the situation and of the risk;

   c. Rule 6: Failure to proceed at a safe speed considering the weather conditions; state of visibility; maneuverability of the Vessel, the state of wind, sea and current; the characteristics, efficiency and limitations of the

       Vessel's radar equipment; the effect on radar detection of the sea state, weather and other sources of interference;

  d. Rule 7: Failure to determine risk of collision;

  e. Rule 8: Failure to avoid collision;

  f. Among others.

40. Defendants further violated 46 U.S.C. § 23020 by operating a Vessel in a negligent manner so as to endanger the life of Plaintiff.

41. Defendants further violated Puerto Rico Act 430 of 2000, commonly known as the Puerto Rico Navigation and Aquatic Safety Act, Article 7(9) by:

  a. Reckless and negligent operation of the Vessel;

  b. Failing to meet the safety requirements;

  c. Failing to meet the vessel operating license requirements;

  d. Among others.

42. By information and/or belief, Defendants did not comply with Puerto Rico Police regulations for training and/or licensing related to the operation of vessels.  In the alternative, defendants were not prepared for the safe operation of vessels under circumstances similar to the incident herein.

43. Accordingly, the above violations constitute negligence per se under the Pennsylvania Rule.

44. As a direct and proximate cause of the above, Plaintiff was injured as describe before.

45. All defendants are jointly and severally for all damages caused to Plaintiff.

**COUNT IV: DAMAGES**

46. The allegations of the preceding paragraphs are re-alleged as if fully set forth in their entirety.

47. As a direct and proximate cause of Mr. Luciano negligence and unseaworthiness of the power boater owned and/or leased by defendant Mr. Roman which is co-owned by Debbie Melisa Falto and insured by Aspen and Blue Waters Plaintiff and as of result of Defendants breach of contract Plaintiff has experienced physical impairment, mental anguish, and pain and suffering in the past. Plaintiff will continue to experience physical impairment, mental anguish, and pain and suffering in the future.

48. Thus, Plaintiff seeks monetary damages for the following:

   a. Physical pain and suffering including but without impairment;
   b. Mental and emotional pain and suffering;
   c. Past and future medical expenses;
   d. Loss of enjoyment of life; and
   e. Additional damages to be shown at trial.

49. As a result of the incident and due to the breach of contract Plaintiff not only have to pay out of pocket expenses to be detailed below, but also lost the ability to travel with his boat safely; which he considers his home, with the aggravating condition that the date the accident occurred until it was repaired on or about February 15th 2025. Plaintiff was severely affected as it took him until the hurricane season and should a storm move on his way, he would be unable to escape it. This led him to extreme levels of stress.

50. The physical and emotional damages suffered by Plaintiff are estimated in a sum in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

51. The economic damages including, suffered by Plaintiff are estimated in the following sum:

   a. Fuel cost: $ 553.81;

   b. Customs and Immigration into the Bahamas: $347.00;

   c. Dockage's cost: $2,240.38

   d. Insurance increase to meet the marinas requirements for using a slip: $257.50

   e. Repair's costs: $5,232.82

   f. Gelcoat repair and readhering of the starboard bow stainless steel plate: $600

      For a Partial Sum of Nine Thousand Two Hundred and Thirty One Dollars with fifty one cent ($9,231.51)

   g. Estimate of additional parts that need to be replaced in the amount of $5,553, that does not include final shipping cost to the marina nor slip fees and labor costs and will take 6-8 weeks to get made and 55 days travel time from South Africa to Florida by ship.

52. All defendants are jointly and severally for all damages caused to Plaintiff.

### COUNT V: GROSS NEGLIGENCE AND PUNITIVE DAMAGES

53. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

54. The breaches of duties by the Defendants as owners and operators of the Vessel from reasonable care and wanton disregard for Plaintiff's safety entitled plaintiff to receive an award for Punitive Damages in Excess of $200,000.00.

55. As a direct and proximate cause of the above, the Plaintiff was severely injured.

56. Therefore, Plaintiff is entitled to an award of punitive damages.

### COUNT VI:  DIRECT ACTION

57. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

58. Under Puerto Rico's Direct-Action Statute, the insurer issuing a policy insuring any person against loss or damage through legal liability for bodily injury and damages to a third party, shall become liable whenever a loss covered by the policy occurs.  26 P.R. Laws Ann., § 2001.

59. Aspen and Blue Waters are liable for the damages herein demanded pursuant to the insurance policy issued for the benefit of Defendants.

### COUNT V: TEMERITY

60. The preceding paragraphs are incorporated as if fully set forth herein.

61. In the event that Defendants deny responsibility for the damages claimed herein, due to Defendants obstinate and temerarious denial, Plaintiffs are also entitled to be awarded pre-judgment and post-judgment interest to be computed from the amount finally adjudged to them, plus a reasonable amount for attorney's fees.

### VI. JURY TRIAL

62. Plaintiff demands a trial by jury.

### VII. RELIEF

WHEREFORE, plaintiff Matthew Beaudette, prays that, after due proceedings, the Court grants the Complaint and enters judgment in his favor and against all defendants jointly

and severally, granting the damages claimed herein, and taxing a reasonable amount for attorney's fees, costs of these proceedings, and any other equitable relief.

**RESPECTFULLY SUBMITTED** this 29th day of August of 2025.

*s/ Francisco L. Charles-Gómez*
Francisco L. Charles-Gómez
USDC-PR-303211
Charles-Gómez Law Office, LLC
P.O. Box 1360 Trujillo Alto, P.R. 00977
Tel. (787)-662-0178
Fax. (787)-724-6780
fcharleslaw@gmail.com